IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Jason A. Gaza

    Plaintiff,

CASE NO. 8:15 cv2786T36TGW

v.

Florida Health Science Center, Inc. d/b/a Tampa General Hospital and Teri Kintzer a/k/a/ Teri Kintzer Echevarria

    Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL AND INJUNCTIVE RELIEF

Plaintiff, brings this action against Defendants, on the grounds set forth herein.

## I. PRELIMINARY STATEMENT

This action arises out of the facts and circumstances surrounding the failure to amend inaccurate medical records by the Defendant, Tampa General Hospital ("hereafter "TGH") and Teri Kintzer. Plaintiff, an individual, institutes this action for permanent injunctive relief in enforcing the Defendants obligations to amend medical records that were and are not accurate, for violations of Civil Conspiracy, Breach of Fiduciary Duty and for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, (hereafter "FCRA") and Civil Rights Act 42 U.S.C. § 1983. Specifically, Plaintiff entered Defendant's place of business on approximately May 19, 2008 for treatment of multiple symptoms, however the Plaintiff was misdiagnosed. Despite following Defendant's instructions Plaintiff experienced similar symptoms for many months and years. Plaintiff subsequently obtained treatment at one of the world's foremost

treatment facilities where after symptoms resolved. Plaintiff learned that Defendant was maintaining records that were incomplete and inaccurate and that said records further contained alleged diagnosis that had no factual predicate and that said records contained comments suggested that Plaintiff suffered from conditions from which Plaintiff did not and has not suffered. The gravitas of such inaccuracies have a negative impact on Plaintiff.

Upon learning of his rights under HIPAA concerning the inaccurate medical records maintained by TGH, Plaintiff sought to have the records corrected or amended in accordance with his rights under. Plaintiff contacted TGH on October 1, 2014 and February 2, 2015 in an effort to exhaust his administrative remedies. Defendant has thus far failed, refused and/or neglected to amend the inaccurate medical records in question, records which include, but are not limited to unsigned documents, illegible documents, unverified documents and documents that contain diagnosis without the proper factual basis.

This case seems to involve a simple misunderstanding of language syntax. For instance the words "is" and "was" in relation to each other. Their entire basis for blocking records amendment is that information "is" accurate based on what "was" thought to be accurate at the time. However, this interpretation is completely in violation of common sense and the plain language application of HIPAA which calls for the correction of medical records if new information is discovered or if the records are presently discovered to be incorrect. That is when looking back if the condition could not be possible then the records must be changed. As the information "is" it currently "is" impossible for the Plaintiff to have the illness that the Defendant claims he had.

## II. PARTIES

1. Plaintiff is a natural person residing in Pasco County, Florida.

2. Defendant, TGH is a not for profit hospital safety net hospital who creates and maintains medical records (protected health information) in the course of the medical treatment they provide.

3. Defendant, Teri Kintzer is a medical doctor licensed by the State of Florida.

### III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court by 28 U.S.C. 1331 and 28 U.S.C. 1367.

5. Venue is this District is proper in that the Defendants transact business here and the conduct of underlying the complaint occurred in Hillsborough and Pasco County, Florida, which falls under the jurisdiction of the Tampa Division of the Middle District Court.

### IV. STAUTORY PROVISIONS FLORIDA ADMINISTRATIVE LAW, 64B8-9.003

6. Florida Administrative Law, 64B8-9.003 Standards for Adequacy of Medical Records states:

2) A licensed physician shall maintain patient medical records in English, in a legible manner and with sufficient detail to clearly demonstrate why the course of treatment was undertaken.

(3) The medical record shall contain sufficient information to identify the patient, support the diagnosis, justify the treatment and document the course and results of treatment accurately, by including, at a minimum, patient histories; examination results; test results; records of drugs prescribed, dispensed, or administered; reports of consultations and hospitalizations; and copies of records or reports or other documentation obtained from other health care practitioners at the request of the physician and relied upon by the physician in determining the appropriate treatment of the patient.

### V. STAUTORY PROVISIONS HIPAA

7. Under Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), an individual has the right to amend protected health care information: (45 CFR 164.526)

   (a) Standard: Right to amend.

   (1) Right to amend. An individual has the right to have a covered entity amend protected health information or a record about the individual in a designated record set for as long as the protected health information is maintained in the designated record set.

   (2) Denial of amendment. A covered entity may deny an individual's request for amendment, if it determines that the protected health information or record that is the subject of the request:

   (i) Was not created by the covered entity, unless the individual provides a reasonable basis to believe that the originator of protected health information is no longer available to act on the requested amendment;

   (ii) Is not part of the designated record set;

   (iii) Would not be available for inspection under § 164.524; or

   (iv) Is accurate and complete.

8. The response by a covered entity must be within a certain period of time below and the response must be in writing: (45 CFR 164.526)

   (2) *Timely action by the covered entity.*

   The covered entity must act on the individual's request for an amendment no later than 60 days after receipt of such a request, as follows.

A) If the covered entity grants the requested amendment, in whole or in part, it must take the actions required by paragraphs (c)(1) and (2) of this section.

(B) If the covered entity denies the requested amendment, in whole or in part, it must provide the individual with a written denial, in accordance with paragraph (d)(1) of this section.

(ii) If the covered entity is unable to act on the amendment within the time required by paragraph (b)(2)(i) of this section, the covered entity may extend the time for such action by no more than 30 days, provided that:

(A) The covered entity, within the time limit set by paragraph (b)(2)(i) of this section, provides the individual with a written statement of the reasons for the delay and the date by which the covered entity will complete its action on the request; and

(B) The covered entity may have only one such extension of time for action on a request for an amendment. (45 CFR 164.526).

(c) Implementation specifications: Accepting the amendment. If the covered entity accepts the requested amendment, in whole or in part, the covered entity must comply with the following requirements.

(1) Making the amendment. The covered entity must make the appropriate amendment to the protected health information or record that is the subject of the request for amendment by, at a minimum, identifying the records in the designated record set that are affected by the amendment and appending or otherwise providing a link to the location of the amendment.

(2) Informing the individual. In accordance with paragraph (b) of this section, the covered entity must timely inform the individual that the amendment is accepted and obtain the individual's identification of and agreement to have the covered entity notify the relevant

persons with which the amendment needs to be shared in accordance with paragraph (c)(3) of this section.

(3) Informing others. The covered entity must make reasonable efforts to inform and provide the amendment within a reasonable time to:

(i) Persons identified by the individual as having received protected health information about the individual and needing the amendment; and

(ii) Persons, including business associates, that the covered entity knows have the protected health information that is the subject of the amendment and that may have relied, or could foreseeably rely, on such information to the detriment of the individual.

## VI. STATUTORY STRUCTURE FCRA

9. Under the FCRA The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, a credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit or insurance to be used primarily for personal, family, or household purposes; employment purposes or reason under 15 U.S.C. § 1681b.

10. No consumer reporting agency may make any consumer report containing any other adverse item of information which antedates the report by more than seven years. 15 U.S.C. § 1681c

11. Under the FCRA the term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and

which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a

12. Under the FCRA if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller. Paragraph (5) states: If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall– (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer. 15 U.S.C. § 1681i

13. Under FCRA, 15 U.S.C. § 1681n (616), any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of not less than $100 and not more than $1000.

14. Under FCRA, 15 U.S.C. § 1681o (617), any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable

to that consumer in an amount equal to the sum of (1) any actual damages sustained by the consumer as a result of the failure; and (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

## VII. STATUTORY STRUCTURE CIVIL RIGHTS ACT 42 U.S.C. § 1983

15. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. (42 U.S.C. § 1983)

## VIII. STATEMENT OF FACTS

16. The medical records that TGH maintains are consumer reports under the FCRA and the Defendant is a consumer reporting agency. (hereafter "CRA")

17. The medical records in question by TGH are consumer reports because they contain information including but not limited to character, general reputation, personal characteristics, or mode of living and this information is used to obtain payment for medical insurance and information kept on defendant's consumer reports (medical records) could be used to obtain or deny life insurance.

18. Amongst other reasons at a minimum TGH is a CRA because they obtain and compile medical records in the form of consumer reports in order to furnish that information to third parties for reimbursement.

19. On May 19 and May 20, 2008 Plaintiff was seen at TGH for multiple symptoms related to a later diagnosed illness due to an anatomical abnormality.

20. On May 19 and May 20, 2008 Plaintiff was diagnosed with conditions that are and were not accurate.

21. The facts, opinions, diagnoses and clinical presentation were documented in the medical records inaccurately and with a disregard for Plaintiff's history and the relevant facts and also in disregard for the medical protocols that are required for making an accurate diagnosis.

22. Patients of Defendant are provided with a notice titled," Privacy of Information About Your Health". (hereafter "notice")

23. Under the heading, "Right to Amend" of the notice it states:

If you feel that medical information we have about you is incorrect or incomplete, you may ask us to amend the information, for as long as the hospital maintains the information. To request an amendment, your request must be made in writing and submitted to Health Information Management Dept., Attn: Director, at the address listed above. In addition, you must provide a reason that supports your request. We may deny your request for an amendment if it is not in writing or does not include a reason to support the request. In addition, we may deny your request if you ask us to amend information that:

- Was not created by us

- Is not part of the medical information kept by or for the hospital

- Is not part of the information which you would be permitted to inspect and receive a copy

- Is accurate

The hospital personnel who maintain the information will respond to your request within 60 days after you submit the written amendment request form. If we deny your request, we will provide you a written explanation. You may respond with a statement of disagreement to be appended to the information you wanted amended. If we accept your request to amend the information, we will make reasonable efforts to inform others, including people you name, of the amendment and to include the changes in any future disclosures of that information.

24. The notice generally mirrors the Health Insurance Portability and Accountability Act of 1996, which gives the patient the right to amend inaccurate medical records.

25. Plaintiff provided in writing, extensive documentation including medical records, medical text book references and medical journal references and statements of his symptom progression after discharge.

26. Defendant initially blatantly ignored the Plaintiff's request (exceeding the 60 day and 90 day written response requirement) but when queried by the Plaintiff and the Plaintiff's Counsel claimed they would respond to the request for amendment.

27. TGH refused to amend the records stating:

"Dr Juan Angel, Mr. Gaza's attending physician during the May 2008 admission, is no longer on staff at TGH, and thus we are unable to directly address the request with him. Likewise, Dr. Hope Leblanc, who was involved in Mr. Gaza's treatment in the ER on May 19, 2008, is no longer on staff at TGH or available to amend the records."

and

"With respect to the records authored by Drs. Angel, Leblanc, and Keefe, Tampa General Hospital denies Mr. Gaza's request for amendments on the basis that the information in those records is accurate and complete based upon the information provided at the time."

and

"Dr Kintzer, one of the treating ER physicians, has responded since my earlier correspondence, and declines to amend the record on the basis that the information in those records is accurate and complete based upon the information available to her at the time.".

28. Thus TGH makes the peculiar claims that the above referenced records are accurate even though medical records entered by Drs Angel and Leblanc and Kintzer even if taken as true factually disagree with each other as entered. Otherwise stated, TGH had taken the position that even obviously contradictory records are impervious to any scrutiny of any kind, including amendments.

29. TGH further claims records are accurate even though they have not practiced any diligence in determine the accuracy of the medical records and made any attempt to contact the other doctors involved in the care.

30. In addition, handwritten records that TGH claims are authored by Dr. Keefe of USF are mostly illegible, have no medical professionals name displayed anywhere on the handwritten documents, additionally there is an absence of identification of the Plaintiff as the subject of the medical record on at least one page yet TGH maintains the records are accurate.

31. In the handwritten records (referenced above) the following is written, "... in order for accurate diagnosis the patient should be evaluated by <redacted> <redacted>[1] after 6 months..."

32. Plaintiff obtained evaluation as suggested by TGH and he completely disagrees with TGH's findings in May of 2008 and believes it was due to symptoms of the later diagnosed illness.

33. Under 64B8-9.003 Standards for Adequacy of Medical Records, the medical records must provide enough informaiton to support a diagnosis, clearly with this admission there is doubt if there is enough information to make an accurate diagonosis.

34. Defendant maintains records are accurate but statements made by their staff in their own records indicate that the diagnoses and information to only be accurate contingent on follow up care.

35. Plaintiff was later diagnosed with a totally different illness with overlapping symptoms which should now replace the original diagnoses to accurately reflect the Plaintiff's actual medical history.

36. Handwritten medical records allegedly entered only by Dr. Keefe contain writing that appears to be of two different people.

37. What appears to be a signature on the handwritten medical records allegedly authored by Dr. Keefe appears to be forged or fraudulent.

38. Six signatures made on two separate dates at least five years apart were obtained by public record for Dr. Brian M. Keefe; all of the six signatures obtained by public record closely match each other, however defendants records with the alleged Dr. Keefe signature do not match at all, indicating that Dr. Keefe may not have actually treated Plaintiff and therefore the records cannot be accurate.

---

[1] Redacted by Plaintiff

39. Irrespective of Plaintiff's efforts to resolve this matter administratively, TGH has stated that it intends to keep the inaccurate medical records in controversy several years past what is required for even accurate records.

40. TGH, their employees and Teri Kintzer had a Fiduciary Duty to strictly follow HIPAA and other applicable Florida statutes as listed above.

41. TGH is a state actor because they are a "safety net" and a Disproportionate Share Hospital who receives federal funding to treat indigent persons. This role would otherwise be filled by a public hospital.

42. TGH is a teaching hospital who trains University of South Florida ("USF") students; USF is a state university and therefore a state actor.

43. Teri Kintzer and some other doctors involved in Plaintiff's care are employees of USF who is a state actor.

44. TGH consults with and used employees of a state actor to consult with about the Plaintiff's alleged condition.

45. TGH violated and ignored a law of the United States, HIPAA which prevented the Plaintiff from seeking a proper amendment within the plain language of HIPAA.

## IX. BREACH OF FIDUCIARY DUTY

46. TGH resposed confidence that they would follow applicable Federal and State Law in this case HIPAA and Florida Administrative Law 64B8-9.003 and Plaintiff by allowing them to treat him and receive medical treatment trusted that they would act lawfully and morally.

47. Because TGH was the records owner of the study in dispute and Plaintiff had trust in TGH and TGH resposed confidence that they would act lawfully and in the best interests of the Plaintiffs possible continued medical treatment; when TGH would not amend the records as

necessary to comply with HIPAA and have records conform to HIPAA, Florida Administrative Law 64B8-9.003 and their own internal policies reposed to Plaintiff or in the best interests of the Plaintiff's health and financial status they breached their fiduciary duty and caused the Plaintiff damages.

48. Upon admittance TGH reposed confidence that they would act lawfully with respect to HIPAA and other Florida Statutes and/or Administrative Law that when in receipt of a request by Plaintiff to amend the records to reflect properly TGH would amend them, Plaintiff trusted that they would actually carry through when they resposed this confidence upon admittance to their facility.

49. Defendants breached their fiduciary duty under HIPAA for failing to amend the Plaintiff's medical records within 60 to 90 days, as required by law.

50. As consequence Plaintiff incurred actual damages because of protracted concern about, having incorrect medical information documented, and the expense incurred because of the necessity of disabusing the Defendant's erroneous records that they refused to amend.

51. Because TGH and Teri Kintzer failed to properly amend inaccurate medical records or even make a timely response to the Plaintiff in compliance with HIPAA, the defendant's notice and Florida Administrative Law, the Defendant breached their fiduciary duty to maintain accurate records and amend inaccurate records in a timely fashion.

### X. PROHIBITIVE AND MANDATORY INJUNCTIVE RELIEF

52. A permanent injunction is proper because a clear legal right has been violated; in this case a violation of HIPAA, rights provided for in the notice that TGH promises as a result of treatment and Florida Administrative Law.

53. Plaintiff may not have any other remedies that would be able to compensate the Plaintiff for his inaccurate records or be able to correct his inaccurate records.

54. Plaintiff's medical history, future medical care, professional reputation, social reputation, employment and insurance rates will suffer permanent irreparable harm if an injunction is not entered.

## XI. FAIR CREDIT REPORTING ACT

56. Because TGH refused to correct inaccurate or unverifiable information within 30 days the Defendant negligently violated the FCRA. 15 U.S.C. § 1681i

57. Because TGH did not delete information that they knew they could not verify or choose not to verify they willfully violated the FCRA. 15 U.S.C. § 1681i

58. Because TGH continues to maintain consumer reports with information older than 7 years the Defendant negligently violated the FCRA. 15 U.S.C. § 1681c

## XII. FLORIDA COMMON LAW CIVIL CONSPIRACY TO DEPRIVE LEGAL RIGHTS UNDER HIPAA

59. Two or more people, including but not limited to Julia Kauzlarich, Benjamin Fuentes, Teri Kintzer, and Carl Heaberlin (hereafter "conspirators") conspired to limit or completely deprive the Plaintiff of his legal rights under HIPAA.

60. The conspirators deprived the Plaintiff of his legal rights under HIPAA by knowingly and wantonly failing to act within the time limits of HIPAA.

61. The conspirators deprived the Plaintiff of his rights under HIPAA for failing to contact all medical professionals which were reachable for amendment and for maintaining records after a request for amendment in the Plaintiff's medical file that that do not identify him as the patient.

62. The conspirators attempted to restrict the Plaintiff's rights under HIPAA after responding to the amendment placing a time limited caveat on the Plaintiff's rebuttal that is not based on any legal authority.

63. The conspirators denied the Plaintiff's request for amendment thereby denying his rights under HIPAA by claiming that because the records were believed to be accurate at the time of entry that if information later was revealed that it was a misdiagnosis they were not required to amend the records to reflect the new information.

64. Accordingly TGH and Teri Kintzer are liable under Florida Common law as the result of this conspiracy.

### XIII. DEPRIVATION OF CIVIL RIGHTS 42 U.S.C. § 1983

65. Because TGH and Teri Kintzer deprived the Plaintiff of his rights under HIPAA while acting as state actors or under color of any statute, ordinance, regulation, custom, or usage, of any State they are liable under 42 U.S.C. § 1983

WHEREFORE, Plaintiff prays that judgment be entered against the Defendant for:
   (1) Injunctive relief, an order for destruction of the medical records found to be unverifiable or erroneous addressed to all known entities and persons in possession of the medical records in controversy.
   (2) Injunctive relief, an order requiring the Defendant fully investigates the requested amendment with all medical professionals involved in the medical records.
   (3) Injunctive relief, an order amending the medical records so they are accurate based on evidence presented.

(4) Injunctive relief, an order requiring the complete destruction of all medical records no later than the minimum time required for accurate records under Florida Law or maximum time under the Fair Credit Reporting Act.

(5) Injunctive relief; ordering the Defendant to allow the Plaintiff to submit a rebuttal as required under law.

(6) Statutory damages pursuant to FCRA, 15 U.S.C. § 1681n

(7) Attorney's fees pursuant to FCRA, 15 U.S.C. § 1681n

(8) Actual damages pursuant to FCRA, 15 U.S.C. § 1681n

(9) Actual damages and for Breach of Fiduciary and Civil Conspiracy

(10) Actual and Punitive Damages for Civil Rights violations 42 U.S.C. § 1983

(11) Attorney's fees for Civil Rights 42 U.S.C. § 1983 violations under 42 U.S.C. § 1988

(12) Costs and legal expenses incurred in bringing this action.

(13) Such other relief that the Court deems just and proper

*[signature]*

Jason A. Gaza (Pro Se)
11628 Pilot Country Dr.
Spring Hill, FL 34610
813-758-4367
gizmosdaddy.gaza@gmail.com